185 So.2d 179 (1966)
Sheryl SIMS, a Minor, by Valerie Sims, a Minor, by Their Next Friend, Lonnie Sims, Appellants,
v.
APPERSON CHEMICALS, INC., a Florida Corporation, and Joe Jennings Johnson, Appellees.
No. G-214.
District Court of Appeal of Florida. First District.
April 14, 1966.
Norton, Wood & Moore, Jacksonville, for appellants.
George A. McKendree, of Howell, Kirby, Montgomery & Sands, Jacksonville, for appellees.
CARROLL, DONALD K., Judge.
The minor plaintiffs in an automobile negligence action have appealed from a final judgment entered by the Circuit Court *180 for Duval County based upon a directed verdict for the defendants.
The question presented for our determination in this appeal is whether there was sufficient evidence at the trial from which the jurors could have lawfully found the defendants, or either of them, guilty of negligence proximately causing the plaintiffs' injuries.
At the trial the undisputed evidence established the following facts: At about 11 o'clock of the night in question the mother of the said plaintiffs, one of whom was two years old and the other five, was driving an automobile at about 25 to 30 miles per hour south on Moncrief Road in the City of Jacksonville, on her way to pick up her husband, Lonnie Sims, at his place of employment, the two children riding on the front seat of the car with their mother. The headlights on Mrs. Sims' car were burning on low beam and shone ahead about 150 feet. She had many times before used Moncrief Road, which was a black top road without any markings on the pavement. She was driving on the righthand side of the road when she suddenly saw about 10 or 15 feet away from her a dark unlit object, which was the corporate defendant's truck, parked on the road in front of her. Her car collided with the truck, resulting in the injuries to her said children. No other traffic was on the said road at the time in question.
The trial evidence further established that the defendant Johnson, who was employed by the corporate defendant as a truck driver, had brought the corporation's truck home at about seven o'clcok of the night in question and parked it on Moncrief Road at a point opposite the apartment where he lived; that the truck was loaded at that time and he intended to leave at three o'clock the next morning to make deliveries outside of Jacksonville. Johnson testified that Moncrief Road was a black top asphalt road about 25 to 30 feet wide without any markings on the pavement; that he parked the truck next to the curb so that its right rear wheel was against the curb and that its right front wheel was a few inches away from the curb; that when he parked the truck he turned off all of its lights; that, when he heard the crash, he went out to investigate and found that Mrs. Sims' car had hit his truck on the left side and that the car's right wheels were about two-and-a-half to three feet from the right curb; that he had not been able to park the truck in the off-street parking facilities because of the cars already there; and that he had always parked the truck on the said road since he had resided there but had never received a police ticket for illegal parking.
The chief contention of the appellants-plaintiffs as to the defendants' liability for negligence is founded upon the "all night parking" provision of Sec. 38-27 of the Code of Jacksonville, which provides in pertinent part: "* * * all night parking * * *. No vehicles shall be parked on any paved street for the night unless disabled. * * *" This ordinance is applicable to Moncrief Road at the point where the collision occurred, which is within the municipal limits of Jacksonville. It is also indisputable that that road was paved at the said point and that the defendants' truck was not disabled. The preliminary question then, is whether the evidence at the trial showed that the said truck was parked there "for the night" within the meaning of those words as used in the quoted provision of the ordinance.
At the trial the court refused to admit the above-quoted ordinance into evidence, pointing out that it did not prohibit parking on a street, and that, in any event, the ordinance had no bearing on the case, although the court stated that it was not prepared to say just what the words "for the night" meant in the ordinance.
Like the trial court, we will not attempt to spell out the exact hours and minutes which the legislative body of the City of Jacksonville had in mind when it used the words "for the night" in the quoted *181 ordinance, nor need we try to divine the precise reasons which prompted the use of those words. Why the parking prohibition was restricted to vehicles parked "for the night" is not apparent from the wording of the ordinance, but the said words are there and they must be given legal effect as an integral part of a penal municipal ordinance, and should be strictly construed. We have an obligation to observe and carry out the legislative will as revealed in the ordinance in question. No more fundamental principle is imbedded in the Anglo-American system of jurisprudence than that the judges interpret, not make, laws.
Whatever the exact period of time intended to be covered by the words "for the night" in the quoted ordinance, we find no difficulty in reaching the conclusion that a vehicle parked from 7 P.M. to 3 A.M. is not parked "for the night," and the evidence at the trial was undisputed that on the night in question the defendant Johnson parked the truck at 7 P.M. and was planning to drive away in it the next morning at 3 o'clock.
But, even if it could be held that the defendants violated the said ordinance on the night in question, there is a more vital reason why that ordinance is immaterial to the issue of the defendants' liability in this case  because the evidence fails to show that such violation was the proximate cause of the plaintiffs' injuries.
No rule is more firmly fixed in the negligence law of Florida than that, before a defendant can become legally liable for an act of negligence, the evidence must show that such negligence was the proximate cause of the plaintiff's injuries. Among the myriad of Florida decisions recognizing this rule, there are several which chance to involve automobiles parked in violation of law.
For instance, in Preger v. Gomory, 55 So.2d 541 (Fla. 1951), a negligence action was brought by a father for the wrongful death of his five-and-a-half year old child allegedly caused by the joint negligence of four defendants. The collision occurred on a street in front of an apartment house, in which the plaintiff and his family lived, in the City of Miami Beach. The child was struck by a Cadillac automobile owned by one defendant and driven by a second defendant in a southerly direction on Byron Avenue in the said city. The defendant Sara H. Shulman was the owner of a Pontiac automobile which was operated with her knowledge and consent by the defendant David L. Shulman, and which was parked on the west side of the said avenue facing north. The plaintiff alleged that the manner of such parking was negligent because it violated a certain ordinance of the City of Miami Beach, which provided in pertinent part that the operator of a vehicle shall not park it in a roadway "other than parallel with the edge of the roadway, on the right side of the street, heading the direction of traffic, and with the curbside wheels of the vehicle within one foot of the edge of the roadway * * *." The plaintiff alleged that the Pontiac was negligently parked in a manner violative of the said ordinance and that such negligence was a contributing cause of the accident, which occurred when the child darted out in front of or behind certain parked automobiles, including the said Pontiac.
In this Preger case, at the close of the plaintiff's case the trial court directed a verdict for the defendants and entered a judgment based upon the said verdict. The plaintiff filed a motion for a new trial, which was denied by the trial court. In affirming this judgment the Supreme Court of Florida said the following concerning the liability of the Shulmans:
"We will first consider the case against the Shulmans. By no stretch of the imagination can liability be fixed upon the Shulmans for the death of this child because of any negligence on their part. In addition to the testimony hereinabove set forth, the investigating police officers testified that the Pontiac was parked as far as possible off the street and was *182 approximately parallel with the west edge of the pavement and that only the two right wheels were on the pavement. There was no curbing on the edge of this pavement. It was jagged and uneven. The question of liability on the part of the Shulmans depends on whether or not, by reason of the fact that the Pontiac was headed north instead of south, it constitutes actionable negligence on their part. In Powers v. Standard Oil Company, 98 N.J.L. 730, 119 A. 273, 274, Id., 98 N.J.L. 893, 121 A. 926, the New Jersey Court held that the parking of an automobile on the wrong side of the street was not the proximate cause of injury to a child whose vision is thereby obscured and who attempted to pass behind the car and across the street, with the result that he was struck or run into by another automobile. The court said:
"`* * * The fact that its reversed situation made its position upon the street at that point a violation of the traffic law, did not confer upon the truck either activity or force, so as to constitute it an active efficient instrumentality for harm. * * *
"`In the case at bar it was unimportant whether the defendant's car rested legally or illegally upon the street, since its obstruction to the vision of the crossing pedestrian, or to the driver of a moving car upon the roadway, would, under the testimony, be equally effective. In either event its impotence for harm or damage, as an innocuous, immobile instrumentality, must be manifest, since in both situations it simply presented a patent condition, and not an operating, efficient, or proximate cause, which can be said to contain by its activity, that potentiality for harm or damage, which furnishes the test upon which the rule of liability in this character of tort-feasance is predicated.'
"There is absolutely no proof of any causal connection between the parking of the Shulman car and the happening of the accident."
Applying the foregoing rationale to the facts established by the evidence in the case at bar, it seems to us reasonable to say that, even if the defendants' truck had been parked on Moncrief Road in violation of the Jacksonville ordinance, the truck was an immobile instrumentality that presented a patent situation and not an "operating, efficient, or proximate cause" of the collision involving Mrs. Sims' car.
It is true, of course, that the said collision would not have occurred if the said truck had not been parked at the said time and place on Moncrief Road, but the "if it had not been for" theory has been consistently rejected by the courts everywhere as the sole test as to whether the negligent act of a defendant constituted an "operating, efficient, or proximate cause" of the plaintiff's injuries. By the same rejected theory it could be contended that the accident would not have occurred if Mrs. Sims had selected a different route to her husband's place of employment, or if he had found employment in another section of the city, or had not worked that night; but those acts cannot, of course, add up to proximate cause of the injuries.
Among other cases in which the courts have held that a defendant's violation of a parking ordinance was not the proximate cause of the plaintiff's injuries: McWhorter v. Curby, 113 So.2d 566 (Fla.App. 1959), Smith v. Goldsboro Iron & Metal Co., 257 N.C. 143, 125 S.E.2d 377 (1962), and Norfolk and Dedham Mutual Fire Ins. Co. v. Liberty Mutual Ins. Co., 125 So.2d 175 (La. App. 1960).
The appellants correctly argue in their brief that the established rule in Florida is that in actions at law for negligence the question of negligence or contributory negligence should ordinarily be submitted to the jury for determination and that, when that question is "extremely close," doubt should always be resolved in favor of submitting *183 that issue to the jury. See, for instance, our recent decision in Beikirch v. City of Jacksonville Beach, 159 So.2d 898 (1964). Nevertheless, the trial courts in such cases have retained the power, the exercise of which is subject to appellate review, to direct a verdict for the defendant when the trial evidence is legally insufficient to support a verdict for the plaintiff. We agree, as stated above, with the trial court's determination in the case at bar that the trial evidence was so legally insufficient, although we realize that judicial minds could differ on this proposition.
We have considered the other points raised by the appellants in this appeal and find them to be without substantial merit.
For the foregoing reasons, the final judgment appealed from herein should be and it is
Affirmed.
WIGGINTON, Acting C.J., and TAYLOR, HUGH M., Associate Judge, concur.