## KARON EKLUND v. JAMES LUND AND OTHERS. DEBORAH LYNN MAXWELL SAMPSON v. JAMES LUND AND ANOTHER.

222 N. W. 2d 348.

October 11, 1974—Nos. 44308, 44309.

*Rider, Bennett, Egan, Johnson & Arundel, David F. Fitzgerald,* and *William J. George,* for appellants.

*John J. Flanagan,* for respondent Eklund.

*Hall, Joyce & McHaffie* and *Richard T. McHaffie,* for respondent Maxwell.

Heard before Peterson, Kelly, and Knutson, JJ., and considered and decided by the court en banc.

PER CURIAM.

Defendants James Lund and Johann Herzig appeal from an order denying their motion for a new trial and from the judgment entered against them in consolidated actions brought by plaintiffs Deborah Lynn Maxwell and Karon Louise Eklund for personal injuries sustained in an intersectional automobile collision.

1. The ground for reversal most vigorously pressed by defendants is that the conduct of plaintiffs' counsel was so improper that the trial court abused its discretion in denying their in-trial motions for a mistrial and post-trial motions for a new trial. The misconduct of plaintiffs' counsel was so blatant, at least in cumulative effect, defendants contend, that prejudice must be presumed.

We have carefully studied the record to determine the nature and extent of the asserted improprieties, including claims that counsel for plaintiffs in their opening statements made impermissible appeals to the sympathies of the jury; that counsel for plaintiffs engaged in abuse and ridicule of opposing counsel during the presentation of evidence and the consideration of objections to evidence; that in closing argument counsel for plaintiff Eklund, on the issue of damages, impermissibly argued that the jury should be guided by the "golden rule" and made "casual reference," albeit for illustrative purposes only, to a per diem mathematical measure of damages; that counsel for plaintiffs in closing argument expressed their personal beliefs and opinions, and referred to non-admitted documentary evidence; and, worse, that during the course of the final argument, according to defendants, plaintiff Eklund, a sometime local actress, was observed openly weeping. We conclude that the conduct of which defendants complain, some of which was objected to at trial and the remainder of which was asserted for the first time in the mo-

tion for a new trial, does not warrant reversing the appraisal of the experienced trial court.

The conduct of trial by counsel was not a model of professionalism, particularly as it related to the personal relationships between opposing counsel. The Chief Justice of the United States Supreme Court stated the challenge for all of us in delivering the Fourth John F. Sonnett Memorial Lecture at Fordham University Law School on November 26, 1973:

"Jurors who have been interviewed after jury service, and some who have written articles based on their service, express dismay at the distracting effect of personal clashes between the lawyers. There is no place in a properly run courtroom for the shouting matches and other absurd antics of lawyers sometimes seen on television shows and in the movies. For many centuries of experience, the ablest lawyers and judges have found that certain quite fixed rules of etiquette and manners are the lubricant to keep the focus of the courtroom contest on issues and facts and away from distracting personal clashes and irrelevancies.

"A truly qualified advocate—like every genuine professional—resembles a seamless garment in the sense that legal knowledge, forensic skills, professional ethics, courtroom etiquette and manners are blended in the total person as their use is blended in the performance of the function.

"There are some few lawyers who scoff at the idea that manners and etiquette form any part of the necessary equipment of the courtroom advocate. Yet, if one were to undertake a list of the truly great advocates of the past one hundred years, I suggest he would find a common denominator; they were all intensely individualistic, but each was a lawyer for whom courtroom manners were a key weapon in his arsenal. Whether engaged in the destruction of adverse witnesses or undermining damaging evidence or final argument, the performance was characterized by coolness, poise and graphic clarity, without shouting or ranting, and without baiting witnesses, opponents or the judge. We cannot all be great advocates, but as every lawyer seeks to emu-

late such tactics, he can approach, if not achieve, superior skill as an advocate."[1]

The purpose of a new trial, however, is not to punish such professional lapses but to obviate prejudice. Misconduct of counsel does not warrant a new trial unless the misconduct clearly resulted in prejudice to the losing party. The trial court obviously considered that the improprieties were not so serious as to be clearly prejudicial, and we are not moved to disturb the trial court's conclusion. We are, moreover, persuaded that the several cautionary instructions of the trial court substantially negated possible prejudice arising out of some excess in the give-and-take of opposing counsel. Cf. Anderson v. Hawthorn Fuel Co. 201 Minn. 580, 277 N. W. 259 (1938). The asserted excesses in oral argument fall within the trial court's primary responsibility to determine the line between legitimate advocacy and unfair overreaching. Larson v. The Belzer Clinic, 292 Minn. 301, 305, 195 N. W. 2d 416, 418 (1972). A trial court will not be reversed unless its failure to declare a mistrial or to grant a new trial constituted a clear abuse of discretion. See, e. g., Colgan v. Raymond, 275 Minn. 219, 146 N. W. 2d 530 (1966); Harris v. Breezy Point Lodge, Inc. 238 Minn. 322, 56 N. W. 2d 655 (1953); Reese v. Ross & Ross Auctioneers, Inc. 276 Minn. 67, 149 N. W. 2d 16 (1967). And see, generally, 14 Dunnell, Dig. (3 ed.) § 7102.

2. Defendants Lund and Herzig additionally contend that the trial court erred in instructing the jury concerning forfeiture of right-of-way through travel at an unlawful speed. Defendants' counsel objected to plaintiff Eklund's counsel's final argument on forfeiture but did not object to the court's instruction or propose an acceptable instruction, raising that issue in the motion for a new trial.

The issue arises in this factual posture: Defendant Lund, driving north on Hennepin Avenue toward its controlled intersec-

[1] Burger, *The Special Skills of Advocacy: Are Specialized Training and Certification of Advocates Essential to Our System of Justice?*, 42 Fordham L. Rev. 227, 235.

tion with Franklin Avenue, in Minneapolis, collided with the right rear side of the automobile driven by plaintiff-defendant Maxwell, which was in the act of turning left from the southbound lane of Hennepin Avenue to the eastbound lane of Franklin Avenue. According to the evidence implicitly credited by the jury, Maxwell did not observe the approach of Lund because he had been in a left-turn lane of northbound traffic on Hennepin Avenue and abruptly verred into the right, or through lane, of Hennepin Avenue only after Maxwell was well into her turn, substantially perpendicular to Hennepin Avenue. Although Lund was not proved to have exceeded the posted speed limit, the jury could find that, under the circumstances of weather and road conditions and his last-minute switch of lanes, he did not drive at an appropriate, reduced speed as he approached the intersection. The issue is whether his failure to do so was a violation of statute.

Among the several statutes read to the jury by the court were Minn. St. 169.14, subds. 1 and 3:

"Subdivision 1. No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so restricted as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care."

"Subd. 3. The driver of any vehicle shall, consistent with the requirements, drive at an appropriate reduced speed when approaching and crossing an intersection * * * and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions."

and Minn. St. 169.20, subd. 2:

"Subd. 2. The driver of a vehicle intending to turn to the left within an intersection * * * shall yield the right of way to any vehicle approaching from the opposite direction which is within

the intersection or so close thereto as to constitute an immediate hazard."

and one paragraph of Minn. St. 169.20, subd. 1:

"The driver of any vehicle traveling at an unlawful speed shall forfeit any right of way which he might otherwise have hereunder."

We have explicitly held that "[t]he failure to drive at an appropriate reduced speed in compliance with § 169.14, subd. 3, constitutes driving at an *unlawful* speed under § 169.20, subd. 1." Norton v. Nelson, 236 Minn. 237, 244, 53 N. W. 2d 31, 36 (1952). See, also, Adelmann v. Elk River Lbr. Co. 242 Minn. 388, 65 N. W. 2d 661 (1954). The forfeiture rule applies to a left-turn situation as much as to vehicles approaching on intersecting highways. Anderson v. Mid-Motors, Inc. 256 Minn. 157, 98 N. W. 2d 188 (1959). See, also, Butler v. Engel, 243 Minn. 317, 68 N. W. 2d 226 (1954).

The critical issue is whether the forfeiture rule should apply to a vehicle entering, as here, a semaphore-controlled intersection with a circular green light in the driver's favor. We hold that it does. A literal reading of § 169.20, subd. 1, seemingly would, as defendants contend, make it applicable only to uncontrolled intersections. However, we held in Cooper v. Friesen, 296 Minn. 160, 163, 207 N. W. 2d 742, 745 (1973), that the statute is applicable to intersections controlled by "yield" signs, stating:

"* * * The statute governing the duties of motorists at yield-right-of-way signs, Minn. St. 169.201, does not explicitly incorporate the language of § 169.20, subd. 1, providing that excessive speed forfeits the right-of-way to vehicles approaching uncontrolled intersections; an extremely technical and literal reading could produce the anomalous result that excessive speed would forfeit the right-of-way granted to vehicles approaching such intersections but would not forfeit it to those approaching intersections protected by a yield sign. We reject such a reading of the statutes. In previous cases, we have given a broad and in-

clusive reading to the forfeiture-for-unlawful-speed provisions of § 169.20, subd. 1, Anderson v. Mid-Motors, Inc. 256 Minn. 157, 98 N. W. 2d 188 (1959); Kolatz v. Kelly, 244 Minn. 163, 69 N. W. 2d 649 (1955); we now hold that the forfeiture provision applies with equal force to a motorist approaching an intersection protected by a yield sign."

If the statute is reasonably applicable to intersections controlled by yield signs, we see little basis for distinguishing the statute as to intersections controlled by traffic lights.[2]

Affirmed.

---

[2] The basic duties of the driver of a turning vehicle at an intersection controlled by traffic-control green signals are set forth in Minn. St. 169.06, subd. 5(a)(1): "Whenever traffic is controlled by traffic control signals exhibiting different colored lights, or colored lighted arrows, successively one at a time or in combination, only the colors Green, Red, and Yellow shall be used, except for special pedestrian signals carrying a word legend, and said lights shall indicate and apply to drivers of vehicles and pedestrians as follows:

"(a)  Green indication—

"(1)  Vehicular traffic facing a circular green signal may proceed straight through or turn right or left unless a sign at such place prohibits either such turn. But vehicular traffic, including vehicles turning right or left, shall yield the right of way to other vehicles and to pedestrians lawfully within the intersection or adjacent crosswalk at the time such signal is exhibited."

Undoubtedly this statute should have been read to the jury together with the statutes the court did read. However, defendants failed to propose it to the court as part of the instructions and failed to object to its omission. Nor did they mention it in their joint motion for a new trial. Accordingly, they have no standing to complain that the instructions were incomplete with respect to the basic duties of both motorists.