318 So.2d 480 (1975)
Dr. A. Lamar MATTHEWS, Appellant,
v.
Catherine W. WILLIFORD, Etc., Appellee.
Nos. 74-218, 74-219.
District Court of Appeal of Florida, Second District.
September 5, 1975.
*481 W. Robert Mann of Mann, Fay & Price, Bradenton, for appellant.
Spence, Payne & Masington and Podhurst, Orseck & Parks, Miami, for appellee Williford.
HOBSON, Judge.
Appellee, hereinafter referred to as plaintiff, brought an action under former Florida Statute 768.01-02 and Florida Statute 46.021 for wrongful death and survival damages against the appellant, Dr. Matthews, hereinafter referred to as defendant, for medical negligence.[1]
Final judgments were entered for the plaintiff in both causes of action, which judgments are appealed herein.
The defendant's first point on appeal is that the trial court erred in refusing to instruct the jury on the issue of comparative negligence as between the plaintiff, plaintiff's decedent, and the defendant. The trial court held that, as a matter of law, any negligence on the part of the plaintiff or plaintiff's decedent prior to the time that plaintiff's decedent came under the care of the defendant was not available as a defense to malpractice which causes a distinct subsequent injury, to wit, the wrongful death.
The law is well settled in this state that a remote condition or conduct which furnishes only the occasion for someoneelse's supervening negligence is not a proximate cause of the result of the subsequent negligence. McClain v. McDermott, Fla. 1970, 232 So.2d 161; S.A.L.R. Co. v. Mullin, 70 Fla. 450, 70 So. 467; Tampa Elec. Co. v. Jones, 138 Fla. 746, 190 So. 26; Pinkerton-Hays Lumber Co. v. Pope, Fla. 1961, 127 So.2d 441; McWhorter v. Curby, Fla.App. 1959, 113 So.2d 566; Sims v. Apperson Chemicals, Inc., Fla.App. 1966, 185 So.2d 179; A.C.L.R. Co. v. Ponds, Fla.App. 1963, 156 So.2d 781; or contributory (comparative) negligence; Bessett v. *482 Hackett, Fla. 1953, 66 So.2d 694; Kuhn v. Telford, Fla.App. 1959, 115 So.2d 36.
There is evidence in the record of some negligence on the part of the plaintiff and plaintiff's decedent prior to the decedent coming under the professional care of the defendant. The defendant does not challenge the sufficiency of the evidence to prove medical negligence on his part, after the decedent came under his care, which was a legal cause of the wrongful death.
The decedent, ten years prior to the heart attack which caused his demise, had a heart attack and was advised at that time that he should not smoke and should not become overweight. He also had been having chest pains and shortness of breath for some six months prior to his death. He was informed approximately six months prior to his death that an EKG disclosed no heart problem. There was proof that his symptoms increased in frequency and severity. He had called the defendant some time during the week prior to his death to arrange for a check-up in the hospital for chest pains and nausea and then called back within two hours asking the defendant to wait until the following week to admit him into the hospital. At that time the defendant had not undertaken the medical care of the decedent. The plaintiff called the defendant on November 6, 1970 requesting medication because decedent was having chest pains, nausea, and a stomach disorder. At this time no mention was made of shortness of breath.
On November 9, 1970, the plaintiff and the decedent called the defendant for admission into the hospital, which defendant immediately arranged. The defendant acknowledged that he was advised of the chest pains and admitted he was advised of the shortness of breath. Defendant also was aware of the prior heart attack. The decedent passed away in the early morning hours of November 10, 1970, of a massive myocardial infarction.
There was expert medical testimony that the defendant did not meet the requisite standard of care under the circumstances. This testimony included that he should have taken a detailed history and the decedent should have been seen immediately and examined at the hospital by the defendant. The deceased should have been placed immediately in the cardiac care unit; intravenous should have been commenced; a cardiac monitor should have been installed; and cardiac medications commenced. The defibrillator, warmed and ready to be utilized, should have been alongside the bed with nurses available to apply it to the patient's chest in the event of cardiac arrest. A venous pressure apparatus should have been made available, together with trained nurses in the cardiac unit room. The defendant should have made an admitting physical exam, together with an admitting diagnosis. Under the circumstances a heart attack should have been assumed on admission or that one was imminent. The expert medical testimony to a reasonable medical probability was "If he had been put to bed rest and had been in a coronary care unit, the damage to the heart would have been much less; and that is why I say he wouldn't have died."
The defendant cites two Florida cases in support of his position that the plaintiff's negligence and her decedent's negligence is a defense when such negligence plays a part in the ultimate death. These cases are General Hospital of Greater Miami, Inc. v. Gager, Fla.App.3d 1964, 160 So.2d 749, and Musachia v. Rosman, Fla.App.3d 1966, 190 So.2d 47. These cases are distinguishable in that they both hold only that violation of the physician's instructions given in the course of treatment is adefense when such contributory negligence plays a part in the ultimate death. In the case sub judice they alleged negligence on the part of plaintiff and her decedent occurred prior to the decedent coming under the care of the defendant.
*483 We have not been cited any Florida case directly in point nor have we been able to discover one through our own research. The case most nearly in point is Lamoree v. Binghamton General Hospital, 68 Misc.2d 1051, 329 N.Y.S.2d 85, where it is stated at page 90:
"The complaints allege negligence after admission to the Hospital. The complaint in the action against the Hospital, paragraph 6, alleges that plaintiff's intestate was `suffering from a gunshot wound of the right thigh' on admission to the Hospital. The complaint in the action against the defendant Rommel, paragraph 5, alleges that the defendant attended and treated plaintiff's intestate `for a gunshot wound of the right thigh and shock due to loss of blood * * *' That the decedent was suffering from a `gunshot wound' is not disputed. Any tortious acts of the defendants, if there were any, were successive and independent of any act of the plaintiff and the decedent on the afternoon of September 11, 1965 before the intestate was admitted to the Hospital. Since the complaints allege negligence on the part of the defendants after admission to the Hospital, any conduct on the part of the plaintiff administratrix or plaintiff's intestate before admission to the Hospital should not be considered as a defense by the defendants for any negligence or improper treatment after the plaintiff's intestate was admitted to the Hospital."
See also Larsen v. Belzer Clinic, 292 Minn. 301, 195 N.W.2d 416, and the annotation in 50 ALR2d 1043, § 2, at page 1046.
The plaintiff is not claiming damages for the heart attack. The damages she claims, and received from the jury under proper instructions from the court, were the damages for the survival period losses during the life expectancy of the deceased if he had survived, together with damages for the wrongful death, not the heart attack. Any conduct on the part of the plaintiff or the decedent contributing to the heart attack was not a proximate cause of the damages sought in these two actions.
In short, conduct prior to an injury or death is not legally significant in an action for damages like this, unless it is a legal or proximate cause of the injury or death  as opposed to a cause of the remote conditions or occasion for the later negligence. So it is with conduct of a patient which may have contributed to his illness or medical condition, which furnishes the occasion for medical treatment. That conduct simply is not available as a defense to malpractice which causes a distinct subsequent injury  here, the ultimate injury, wrongful death.
The second point raised by the defendant, the trial court erred in refusing to submit to the jury any of the special verdict forms requested by defendant Dr. A. Lamar Matthews which would have permitted the jury to apportion the negligence of the plaintiff, plaintiff's decedent, and the defendant-doctor and defendant-hospital; and erred further in instructing the jury that it could not apportion the negligence and damages as between the defendant-doctor and the defendant-hospital, is put to rest by Chapter 75-108, Laws of 1975, creating § 768.31, Fla. Stat.
The other points on appeal have been duly considered and found to be without merit.
For the foregoing reasons the judgments appealed are
Affirmed.
McNULTY, C.J., and BOARDMAN, J., concur.
NOTES
[1] The alleged wrongful death and medical negligence occurred prior to July 1, 1972, the effective date of the new Florida Wrongful Death statute, Fla. Stat. 768.16-27.