Cheryl BAUER, Appellant,

v.

Mark FRIEDLAND, et al., Fred Behrens, et al., Respondents.

No. C8–86–390.

Court of Appeals of Minnesota.

Oct. 14, 1986.

Mark Patrick Essling, St. Paul, for appellant.

Patti Jo Skoglund, Jardine, Logan & O'Brien, St. Paul, for Mark Friedland, et al.

James R. Gowling, Geraghty, O'Loughlin & Kenney, St. Paul, for Fred Behrens, et al.

Heard, considered and decided by LESLIE, P.J., and WOZNIAK and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

It must be determined on this appeal whether the evidence was sufficient to avoid a summary judgment for the defendants in a medical malpractice case. We reverse and remand for trial.

## FACTS

Appellant Cheryl Bauer brought an action for medical malpractice against Dr. Mark Friedland, Dr. Fred Behrens, Ramsey Clinic Associates, Inc., and St. Paul Ramsey Medical Center. Friedland and Behrens performed surgery on appellant in April 1982. The doctors intended to remove four metal wires placed in appellant's ankle following a motorcycle accident in June 1979. However, respondent doctors were able to completely remove only three of the four wires. The fourth wire would not budge because the bone had grown around the wire. Respondents decided to leave a portion of the wire in place because they believed removal would require several bone cuts that would jeopardize the bone for possible fracture.

Friedland stated in his deposition that there was a risk the remaining wire would loosen and migrate, causing damage. Cheryl Bauer stated in her deposition that neither Behrens nor Friedland told her that a portion of the wire remained in her ankle following surgery. Friedland stated he did not recall informing appellant that a portion of the wire remained in the ankle. The record contains no statements or deposition from Behrens on this issue. The hospital records contain no indication that appellant was informed of the remaining wire.

Following surgery and during out-patient care, appellant complained of pain to Friedland and Behrens. Friedland told appellant the pain was the result of lack of cartilage. Behrens told appellant there was nothing wrong with her ankle. Appellant did not return to Ramsey Clinic after July 1982.

In November 1982, appellant was seen by a Dr. Coleman in Cambridge, Minnesota. She was now experiencing severe pain in her ankle and something was sticking out of the ankle. In his report dated November 23, 1982, Coleman stated he thought the protrusion was a neuroma. Surgery was performed approximately one week later. Upon opening the skin, Coleman found and removed the piece of wire which was protruding from the ankle.

Dr. Terrance Capistrant, a neurological surgeon at Neurological Associates of St. Paul, saw appellant on February 15, 1983. In his letter of the same date, Capistrant concluded there is "partial injury to a branch of the posterior tibial nerve" of the right ankle. Appellant states this is the same place where the wire was protruding. Capistrant was not able to give appellant a shot because the nerve was too tight.

Appellant states she continues to have a great deal of pain, accompanied by a burning sensation. She claims this pain is different from the pain she experienced before the three wires were removed. Respondents allege it is the same pain associated with either the original fracture or the initial surgery when the wires were inserted. Appellant is able to walk without a cane or any other type of assistance and does all the housework with some help from her husband. Appellant was not employed at the time of her deposition and was not able to assess the effect of the injury on her ability to work.

The morning of trial, after giving appellant's counsel only fifteen minutes notice, respondents Friedland and St. Paul Ramsey Medical Center moved to dismiss appellant's case. Respondents Ramsey Clinic Associates and Behrens orally joined in this motion. After hearing arguments on the motion the trial court dismissed the case on the grounds that appellant was not able to produce expert testimony to establish a prima facie malpractice case. Cheryl Bauer appeals.

## ISSUE

Did the trial court err in dismissing appellant's medical malpractice action prior to trial?

## ANALYSIS

### 1.

This case comes to us in an unusual posture. Respondents presented to the court a motion to dispose of the proceedings before trial. During argument on the pretrial motion the trial judge considered matters outside of the pleadings. In district court respondents erroneously designated their motion to be one for dismissal. A motion for dismissal for failure to show a right to relief is permitted only after the presentation of plaintiff's evidence. Minn. R.Civ.P. 41.02, subd. 2. Respondents acknowledged before this court that their motion constituted one for summary judgment or, alternatively, a motion for judgment on the pleadings. This was not a motion for judgment on the pleadings. The applicable rule states that if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided for in Rule 56." Minn.R.Civ.P. 12.03. We conclude respondents' motion was a summary judgment motion.

### 2.

The trial court must grant a summary judgment motion if "there is no genuine issue as to any material fact and * * * either party is entitled to a judgment as a matter of law." Minn.R.Civ.P. 56.03. On appeal from summary judgment the reviewing court must apply the same standard. *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979) (it is the function of the reviewing court to determine whether there are any genuine issues of material fact and whether the trial court erred as a matter of law). The reviewing court presumes that all genuinely disputed issues of fact may be resolved in favor of the party against whom judgment was rendered. *Unborn Child v. Evans,* 310 Minn. 197, 204, 245 N.W.2d 600, 605 (1976).

Upon presentation of a Rule 56 motion, materials are commonly submitted to the trial court and filed as part of the trial court record. *See* Minn.R.Civ.P. 56.03. Due to the anomalous procedure used in this case, however, we lack the benefit of a complete record. Appellant's attorney received a copy of the motion the morning of trial and only fifteen minutes prior to argument on the motion. During his argument, the attorney relied on the evidence he proposed to introduce at trial, including the

depositions of Cheryl Bauer and Dr. Friedland and the letters from Dr. Coleman and Dr. Capistrant which describe the post operative condition of appellant's ankle. These materials had not been filed with the trial court and the materials were not made part of the record during arguments on the motion. Following the order and judgment dismissing appellant's case, the trial judge granted appellant's motion to file the depositions with the trial court.

■ We treat the depositions and the letters of medical diagnosis as part of the record for the purpose of deciding whether the case could be dismissed before trial. While the depositions and letters of medical diagnosis were not filed with the trial court prior to argument on the motion, this should not preclude consideration of the items as part of the record on appeal. *See Lundgren v. Eustermann*, 370 N.W.2d 877, 881 (Minn.1985). We note the judge and opposing counsel allowed appellant's attorney to base his argument on the statements contained in these documents, without objection, presumably in lieu of providing appellant with ten days notice of the hearing and an opportunity to file materials in opposition to the motion. *See* Minn. R.Civ.P. 56.03. Although the trial court declined reading the Friedland deposition, it was offered for his examination.

### 3.

■ To establish a prima facie case of medical malpractice for negligent medical treatment, a plaintiff must show "(1) the standard of care recognized by the medical community as applicable to the particular defendant's conduct, (2) that the defendant in fact departed from that standard, and (3) that the defendant's departure from that standard was a direct cause of [the patient's] injuries." *Plutshack v. University of Minnesota Hospitals*, 316 N.W.2d 1, 5 (Minn.1982). The plaintiff must also show loss or damage. *Miller v. Raaen*, 273 Minn. 109, 113, 139 N.W.2d 877, 880 (1966).

■ The trial court dismissed the suit based on its conclusion that appellant lacked the expert testimony necessary to establish her prima facie case. Malpractice claims frequently require expert testimony due to the scientific nature of the matters to be proved. *Id.* However, Minnesota has long recognized that in some cases liability may be established without expert testimony. *Id.* at 114, 139 N.W.2d at 880. Expert testimony is not necessary where the facts to be determined are within the common knowledge of the jury and "where the results of surgical or medical treatment, viewed in the light of all the circumstances, provide a sufficient evidentiary basis to support an inference of negligence." *Hestbeck v. Hennepin County*, 297 Minn. 419, 424, 212 N.W.2d 361, 364 (1973).

■ Where expert testimony is necessary to establish an element of the prima facie malpractice case, the plaintiff may also use the testimony of the defendant doctors, elicited on cross examination. In *Anderson v. Florence*, 288 Minn. 351, 181 N.W.2d 873 (1970), the Minnesota Supreme Court overturned previous decisions and ruled that during pretrial discovery it is not unfair to allow an opposing party in a malpractice case to elicit the defendant doctor's expert opinion. The rule was subsequently applied to cross-examination of defendant physicians at trial. *See Larson v. Belzer Clinic*, 292 Minn. 301, 303–05, 195 N.W.2d 416, 417–18 (1972).

Thus, in reviewing the trial court's determination that appellant lacked sufficient evidence to establish her prima facie malpractice case, we consider each element of appellant's case to determine whether expert testimony was necessary and, if so, whether appellant could expect to produce this expert testimony either through independent medical experts or through cross-examination of respondent doctors. We then determine whether the evidence presents a genuine dispute as to a material fact and whether the trial court erred as a matter of law.

■ Appellant claims respondents Friedland and Behrens breached the applicable standard of care when they failed to inform and advise appellant of the wire

remaining in her ankle and failed to inform her of the accompanying risks. The doctors are responsible for using the degree of skill and learning which is normally possessed and used by doctors in good standing in a similar practice, in a similar locality under the same circumstances. *Kinning v. Nelson,* 281 N.W.2d 849, 852 (Minn. 1979). Physicians also have a duty to advise their patients concerning all of the necessary and proper precautions and attention that must be carried out subsequent to the physician's treatment. *Christy v. Saliterman,* 288 Minn. 144, 167–68, 179 N.W.2d 288, 303 (1970). *See also Ray v. Wagner,* 286 Minn. 354, 357, 176 N.W.2d 101, 103–104 (1970); *Martineau v. Nelson,* 311 Minn. 92, 105, 247 N.W.2d 409, 417 (1976). The failure to properly advise and instruct is negligence which will render the physician liable for resulting injury. *Christy,* 288 Minn. at 168, 179 N.W.2d at 303. We conclude that expert testimony was not necessary to establish the applicable standard of care; as a matter of law respondents had a duty to inform the patient of any risk associated with her condition following surgery.

There was sufficient evidence for a jury to conclude that there were significant risks associated with appellant's condition following surgery. Friedland stated in his deposition that there was a risk the wire would loosen and migrate causing some irritation to the area and that there was a risk the wire would cause damage to a blood vessel. He also stated it was possible the wire could migrate to the ankle joint. There was also sufficient evidence for the jury to conclude that respondents breached their duty to inform appellant of this risk. In fact, no evidence contradicted Cheryl Bauer's testimony that neither Friedland nor Behrens told her of the wire remaining in her ankle.

■ In order to avoid summary judgment appellant must also demonstrate sufficient evidence for the jury to infer that respondents' breach caused her injury. Appellant is not required to prove a causal connection by direct evidence. *Jensen v.*

*Linner,* 260 Minn. 22, 36, 108 N.W.2d 705, 714 (1961). If circumstantial evidence furnishes a reasonable basis for the inference that the doctors' negligence caused the injury, the case should be submitted to the jury. *Id.* at 36–37, 108 N.W.2d at 714. Appellant claims there was a three month period during which she could see and feel a sharp object protruding from her ankle. During this time appellant was in pain and still unaware of the wire in her ankle. A jury could conclude that the presence of the wire caused pain and that appellant did not seek prompt medical attention because respondents failed to inform her of the risk associated with her condition. This would be a reasonable inference based on the available evidence.

■ In addition, there was sufficient expert testimony on the issue of causation. The only fact that appears to require medical knowledge is whether the wire that had been encased by bone could loosen and migrate to the ankle joint. Friedland testified that this was possible. His testimony is admissible as expert testimony. *Larson,* 292 Minn. at 305, 195 N.W.2d at 418. Thus the jury is not required to speculate as to the medical matter essential to appellant's cause of action. *See Smith v. Knowles,* 281 N.W.2d 653, 656 (Minn.1979).

■ Finally, a person is not required to prove her theory of negligence by testimony so clear as to exclude every other possible theory. *Jensen,* 260 Minn. at 33, 108 N.W.2d at 712. Assuming that respondents would introduce evidence that the pain was caused by circumstances for which respondents cannot be held liable, i.e., the motorcycle accident or the surgery where the wires were inserted, the jury must be allowed to determine whether the cause of the injury was the negligence alleged. *Id.* Thus a genuine issue of material fact existed and summary judgment on the issue of causation was erroneous.

**4.**

■ We agree with the trial court that appellant has not yet identified evidence

sufficient to establish a claim for permanent nerve damage. If appellant pursues damages for this claim she will need to introduce expert testimony for those matters that are outside the common knowledge of the jury. *Smith v. Knowles*, 281 N.W.2d at 656.

Appellant sought to introduce the letters of medical diagnosis from Dr. Capistrant and Dr. Coleman as evidence that she suffered permanent nerve damage to her ankle. These letters may be admissible if appellant is able to authenticate them. On remand the trial court should determine whether the letters contain an "unusual opinion" concerning a "highly controversial ultimate issue," thus requiring the author of the opinion to testify before the opinion would be admitted. *See Cornfeldt v. Tongen*, 262 N.W.2d 684, 702 (Minn.1977).

More critically, appellant alleges that the permanent nerve damage could have been prevented if the physicians had properly informed and instructed appellant concerning her condition and if respondents had properly monitored her condition. Expert testimony is necessary to establish that respondents' breach of the applicable standard of care caused the injury. Also, without expert testimony the jury would have to speculate as to whether full disclosure of appellant's post-surgical condition, or compliance with the standard of care recognized by the medical community in monitoring appellant's condition, would have prevented nerve damage.

In summary, we conclude that summary judgment should not have been granted to respondents on appellant's claim for her pain and suffering for the three months immediately preceding the removal of the fourth wire. Appellant was able to present expert testimony for each issue outside of the common knowledge of the jury. There was a genuine issue of material fact for each element of the plaintiff's prima facie case for these damages.

On remand, appellant should be allowed the opportunity to offer appropriate evidence on her permanent nerve damage claim. This is because respondents' motion to dismiss based on the lack of expert testimony was presented to the trial court without notice, and because appellant sought no opportunity through a continuance to attempt correcting her mistaken choice to proceed on this claim without expert testimony.

## DECISION

The trial court erred in granting respondent's motion for summary judgment.

Reversed and remanded.