CHARLES P. OWENS, Plaintiff-Appellant, v. RACHEL A. STOKOE, Ex'x of the Estate of James S. Stokoe, Deceased, Defendant-Appellee.

Third District   No. 3—84—0642

Opinion filed November 5, 1985.

James R. Carter and Christopher P. Ryan, both of Law Offices of Strodel, Kingery & Durree, Associates, of Peoria, for appellant.

David R. Sinn and Karen L. Kendall, both of Heyl, Royster, Voelker & Allen, of Peoria, for appellee.

JUSTICE BARRY delivered the opinion of the court:

Charles P. Owens brought suit in the circuit court of Tazewell County to recover for injuries allegedly suffered due to the malpractice of his oral surgeon, Dr. James Stokoe, deceased (also referred to herein as defendant). Dr. Stokoe died during the course of litigation, and the executrix of his estate was substituted as defendant prior to trial. The matter was tried before a jury and resulted in a verdict for plaintiff, the jury finding that plaintiff suffered damages in the amount of $40,000 and further that plaintiff was 75% contributorily negligent. The damages awarded were reduced to $10,000, accordingly. Judgment was entered on the verdict, and plaintiff's post-trial motion was denied. Plaintiff appeals.

The issues before us are whether the trial court erred in submitting the question of plaintiff's contributory negligence to the jury, whether the trial court abused its discretion in allowing the use of defendant's videotaped evidence deposition and whether the trial court abused its discretion in limiting admission of defendant's office records. We reverse in part.

Plaintiff's association with Dr. Stokoe began in October of 1976. At various times prior to November 25, 1980, plaintiff had teeth

filled, several teeth extracted, partial plates installed and treatment for pyorrhea.

Defendant testified that the plaintiff's mouth was full of infections, he was suffering from a bad cross-bite, loose teeth and pyorrhea in September of 1979; but defendant noted no sign of tumors in the plaintiff's mouth at that time. On cross-examination defendant admitted that his office records contained only a notation about the presence of pyorrhea during that visit, and that they did not contain notations of extensive infections in the plaintiff's mouth. Defendant testified that no X rays were taken of plaintiff's mouth between 1976 and November 25, 1980, because plaintiff refused them. Plaintiff testified to the contrary, that Dr. Stokoe never asked his permission to take X rays prior to November of 1980. In any event, a set of full mouth X rays was first taken during plaintiff's visit of November 25, 1980, when he came in to have his teeth checked and cleaned. During this visit, for the first time, defendant testified that he observed a bulge in the lingual plate that was soft to the touch. Plaintiff, however, testified that he experienced no pain or swelling in his mouth on November 25, 1980.

The X rays revealed two tumors in plaintiff's lower left mandible close to the left inferior alveolor nerve, a sensory nerve serving the lower left teeth, gum tissue and the left half of the lower lip and part of the chin. Defendant initially diagnosed the growths as cementomas or tumors and recommended that they be removed surgically. Defendant testified that the possibility of paresthesia, or numbness, was explained to plaintiff on December 2, 1980. A notation to this effect appears on the defendant's office records. However, at trial plaintiff denied that he had been given any warning of such a risk. Defendant admitted in cross-examination that he did not advise plaintiff to seek a second professional opinion prior to the recommended surgery. Defendant testified that he told plaintiff to go home and discuss it with his wife. He further stated that he told plaintiff that he (plaintiff) would "just take the consequences if he [was] going to let it [the tumors] go and not follow [defendant's] suggestions." Plaintiff discussed the recommended surgery with his wife and decided to undergo surgery, which was performed in defendant's office on December 4, 1980.

Upon removal of the growths, defendant observed them and concluded that they were, indeed, cementomas, and disposed of the calcified material. No infection was observed. Defendant testified that without prior X rays, he had been unable to tell whether the cementomas were growing at the time he first observed them. No pathological examination of the material extracted from plaintiff's mouth was or-

dered by the defendant. Finally, defendant testified that he observed the left inferior alveolar nerve before closing the wound, that it was white or pinkish and that it was not severed. He could not say whether or not the nerve had been bruised by the surgical procedure.

Plaintiff failed to recover sensation to that portion of his mouth and face served by the left inferior alveolor nerve. In February of 1982, defendant recommended that plaintiff consult with Dr. W. James Fitzpatrick for a second opinion about his chances of recovering from the paresthesia. Due to the lapse of time, it was Dr. Fitzpatrick's opinion that plaintiff's chances of ever recovering sensation in the affected area were remote.

At trial, expert witnesses testified on behalf of both plaintiff and defendant. Plaintiff's expert, Dr. Jack Jordan, testified that surgical removal of cementomas is not necessary and that the generally accepted practice of dentistry for the nonmalignant growths is to leave them alone and to observe them from time to time. By contrast, defendant's expert, Dr. Theodore Century, testified that it was not a deviation from accepted standards of practice to advise surgical excision of the growths appearing in the X rays of plaintiff's jaw.

The transcript of defendant's videotaped evidentiary deposition taken by plaintiff on March 12, 1984, under section 2—1102 of the Civil Practice Act was read into evidence during plaintiff's case in chief. Also read into evidence during plaintiff's case in chief were evidence depositions of Dr. Stokoe's office assistant, Judith Brentz, and expert witness, Dr. Jack Jordan.

Over plaintiff's objection, the defense, during its case in chief was allowed to show the jury that portion of the videotaped deposition in which defendant testified as if called on his own behalf. Also over plaintiff's objection, defendant's office records pertaining to the plaintiff were excluded to the extent that testimony failed to establish the identity of the person who made certain annotations. Plaintiff was permitted, however, to place before the jury defendant's office records with the excluded portion masked.

Ultimately, the battle of the experts was resolved in plaintiff's favor. The jury found defendant negligent and that plaintiff suffered damages in the amount of $40,000. Those findings are not at issue in this appeal. Plaintiff's primary challenge is directed to the 75% reduction in his award for contributory negligence.

Defendant's theory of plaintiff's contributory negligence as presented at trial was threefold: (1) plaintiff had failed to obtain a second opinion prior to undergoing surgery to remove the cementomas; (2) plaintiff had taken such poor care of his teeth that he suffered mouth

infection; and (3) plaintiff had refused to permit defendant to X ray his mouth prior to November 25, 1980. Although these allegations were not set forth in defendant's pleadings, they were brought out at trial and urged by defense counsel in arguments to the jury and during the conference on jury instructions as a basis for instructing the jury on the issue of comparative negligence.

■ Plaintiff advances several grounds for reversing the jury's verdict finding plaintiff 75% contributorily negligent. Initially, we reject plaintiff's contention that defendant is precluded from offering comparative negligence instructions where he had failed to plead plaintiff's contributory negligence. This precise issue was recently considered by the appellate court, and we find no occasion on these facts to overrule the court's determination that a defendant's failure to plead contributory negligence will not, *ipso facto*, preclude instructions on comparative negligence. *La Salle National Bank v. City of Chicago* (1985), 132 Ill. App. 3d 607, 478 N.E.2d 417.

■ In the instant case the jury was given Illinois Pattern Jury Instruction (IPI), Civil, Nos. 105.08 (2d ed. 1971) instruction on plaintiff's duty to follow his doctor's instructions, a modified IPI Civil 2d No. 45.01 instruction on comparative negligence, and comparative negligence verdict forms. We find that the issue of comparative negligence was given to the jury improperly.

■ In *Clarkson v. Wright* (1985), 108 Ill. 2d 129, an automobile accident personal injury suit, and *Simpson v. General Motors Corp.* (1985), 108 Ill. 2d 146, a products liability wrongful death action, our supreme court considered whether acts or omissions of plaintiffs which fell short of recovery-barring conduct under the law of contributory negligence prior to *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886, may nonetheless be considered under the law of comparative negligence for purposes of reducing a plaintiff's damages. The court ruled in both cases that such misconduct is not to be compared in apportioning damages. The court clearly stated that '[t]he rationale of comparison of fault for the purpose of allocation of damages is that *conduct which previously would have barred the plaintiff's claim serves instead to reduce the recovery* so that the plaintiff bears the burden of his loss in direct proportion to his fault." (Emphasis added.) (*Simpson v. General Motors Corp.* (1985), 108 Ill. 2d 146, 151, citing *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886.) This limitation applies no less in professional malpractice actions than it does in products liability of ordinary negligence suits.

We have reviewed the record on appeal to determine whether any evidence of plaintiff's contributory negligence, as clarified by our su-

preme court, was presented in the trial of this cause. Generally speaking, "contributory negligence *** is determined and governed by the same tests and rules as the negligence of the defendant." (Prosser & Keeton, The Law of Torts sec. 65, at 453 (5th ed. 1984).) More specifically, "[a] finding of contributory negligence is dependent on two factors. First, a person must act without due care for his own safety; and, second, such action must be the proximate cause of one's injury." (*Blacconeri v. Aguayo* (1985), 132 Ill. App. 3d 984, 990-91, 478 N.E.2d 546, 551, citing *Moran v. Aken* (1981), 93 Ill. App. 3d 774, 417 N.E.2d 846.) Plaintiff's conduct is measured by the standard of the reasonable man under the circumstances, and "plaintiff [has no] duty to anticipate and guard against a defendant's negligence." *Clarkson v. Wright* (1985), 108 Ill. 2d 129, 133.

■■ Applying the foregoing principles to the facts before us, it is clear that the trial court erred in permitting defendant to place the issue of comparative negligence before the jury. The plaintiff's failure to maintain his own teeth and gums to the point where he developed mouth infections and pyorrhea in 1979 falls far short of proof that plaintiff's poor oral hygiene practices proximately resulted in damage to his left inferior alveolor nerve in December of 1980. Similarly, it cannot be said that plaintiff's refusal, if he did, to allow defendant to X-ray his mouth prior to November 25 was a contributory cause of plaintiff's injury. Finally, defendant provides no authority for his assertion that a reasonable man would have sought a second medical opinion under the circumstances here presented. In this regard, we concur with the simple logic expressed by Justice Stephenson in *Lawrence v. Wirth* (1983), 226 Va. 408, 410, 309 S.E.2d 315, 317: "The physician-patient relationship differs substantially from that of the ordinary plaintiff and defendant. Due to the great disparity in medical knowledge between doctor and patient, the patient is entitled to rely upon assurances made by the doctor and, generally, need not seek the opinions and services of others." The failure to seek a second opinion, without more, is not an omission giving rise to the issue of contributory negligence in Illinois.

■■ As aforesaid, our review of the record on appeal conclusively establishes that no proper issue of contributory negligence was presented in the trial of this cause. No issue has been presented in this appeal respecting the amount of plaintiff's total damages as determined by the jury. We hold that plaintiff's post-trial motion praying for the entry of judgment in his favor in the amount of $40,000, the amount of damages found by the jury, notwithstanding the verdict should have been granted.

We have reviewed plaintiff's other issues and find them without merit.

For the foregoing reasons, we reverse that portion of the judgment of the circuit court finding plaintiff 75% contributorily negligent; and, in the exercise of our authority (87 Ill. 2d R. 366), we enter judgment for plaintiff in the amount of $40,000.

Reversed.

SCOTT and STOUDER, JJ., concur.