GERALD L. GEHRE AND LEONARD D. GEHRE, COPERSONAL
REPRESENTATIVES OF THE ESTATE OF LOIS IRENE GEHRE,
DECEASED, APPELLANTS, V. GEORGE RICHARD COLEMAN AND
CHARLES MESSBARGER, APPELLEES.

443 N.W.2d 606

Filed August 4, 1989.   No. 87-066.

O. William VonSeggern, of Grimminger & VonSeggern, for
appellants.

Jeffrey H. Jacobsen and Daniel L. Lindstrom, of Jacobsen,
Orr, Nelson & Wright, P.C., for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN,
GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

The copersonal representatives of the estate of Lois Irene
Gehre brought a medical malpractice action against George
Richard Coleman and Charles Messbarger, both certified
registered nurse anesthetists (CRNA), claiming the defendants'
negligence caused the death of decedent. After trial the jury
returned a verdict in favor of defendants. Plaintiffs timely
appealed, alleging a single error: that the trial court erred in
submitting the issue of the decedent's contributory negligence
to the jury. We reverse.

The record shows that the decedent was the mother of the
copersonal representatives. She was born in 1908 and was 73
years old at the time of her death on July 1, 1982. The decedent
was described as a registered nurse who last worked as an
"industrial nurse" at Rockwell, a plant near Kearney, where she
administered first aid. Her last year of work at the plant is not
definitely known, but one of her friends testified that when the
two became friends, 20 or 25 years before decedent's death,

decedent was primarily doing volunteer nursing work.

On the afternoon of June 8, 1982, the decedent entered Good Samaritan Hospital in Kearney, Nebraska, to undergo a hemorrhoidectomy. That evening Gerald Messbarger, CRNA and brother of defendant-appellee Charles Messbarger, visited decedent in her hospital room. While in the room, Gerald Messbarger had decedent complete a "Pre-anesthesia Patient Questionnaire." She completed the questionnaire as follows:

PRE-ANESTHESIA PATIENT QUESTIONNAIRE

The following questions have been designed for use by the Department of Anesthesia. They are to be completed before the operation. Please answer each question carefully and return the completed sheet to the nurse as soon as possible.

ANSWER yes (Y) no (N) don't know (D)

1. Are you taking any prescription medicine for your: heart __n__? blood pressure __n__? breathing __n__? nerves __n__? other __none__? Give names of medicines:__

2. Have you taken any cortisone or ACTH in the past six months other than into, joints or pain areas by injection __n__? Explain _____

3. Do you have: chronic cough __y__? irregular heart beat __n__? shortness of breath __n__? chest pain __n__? dizziness __n__? other _____? Explain _____

4. To the best of your knowledge, are you allergic to any medicines __y__? If yes, what?
Codiene [sic]

5. Do you object to blood transfusions if they are deemed necessary during surgery __n__?

6. When was your last anesthetic or surgery? Date __none__

7. Other major surgical procedures done in the past 5 years and date. __none__

8. Have you ever had a reaction or other complication to an anesthetic of any kind: __n__? Explain_____

9. Has any member of your family had a complication to a general anesthetic _____? Explain _____

10. Have you ever had "yellow jaundice" liver disease _____? pneumonia or TB __n__? diabetes __n__? other serious illnesses __n__? Explain _____

11. Have you recently been exposed to large amounts of herbicides or insecticides _____?

12. Do you have your own teeth __y__? false __n__? partials __n__? loose teeth __n__? caps __n__? permanent bridge _____?

13. Do you smoke __n__? How much _____?

14. Do you wear contact lenses __n__?

15. How tall are you _5-3_? how much do you weigh _110_? any major recent loss __n__?

16. FOR OUTPATIENTS: When did you last drink or eat anything? _____

17. FOR FEMALES: Do you suspect that you may be pregnant _____?

_____ /s/ Lois Gehre
   Date     Signature of Patient

After decedent had completed the questionnaire, Gerald Messbarger explained the reason for the questionnaire and then went through each question sequentially with her. Gerald Messbarger also explained to decedent that she would be receiving a caudal anesthetic.

The following morning, June 9, 1982, decedent was given 50 milligrams of Demerol as a preoperative sedative, and an intravenous solution of dextrose and electrolytes. Defendant-appellee George Richard Coleman, CRNA, had decedent roll into a prone position with two pillows beneath her pelvis to elevate her buttocks. Coleman reviewed her electrocardiogram and noted that she had a left bundle branch block in her heart. Charles Messbarger, who had known decedent since 1962, talked to her at this time. Although Coleman was the assigned anesthetist for decedent's operation, Charles Messbarger had a few minutes, so he assisted Coleman.

Hospital records show the following, with great specificity as to times. Decedent was monitored by an electrocardiogram and an automatic blood pressure monitor. Decedent was given a 5-cubic-centimeter test dose of Marcaine. During this time, Charles Messbarger was at decedent's head, monitoring her vital signs. Coleman waited 3 minutes in order to determine whether the anesthesia would cause an adverse reaction. Then another 10 cubic centimeters of Marcaine was injected into decedent's lower back. Charles Messbarger reported that decedent's blood pressure was 130 over 82 at both 10:15 and 10:20 a.m., and upon her request for a sedative, Messbarger gave decedent 4 milligrams of Valium at 10:21 a.m.

At 10:25 a.m., Coleman removed his gloves and began to clean up. At this time, decedent's blood pressure had fallen to 110 over 60, and the surgeon began the hemorrhoidectomy. Charles Messbarger last spoke to decedent at 10:27 a.m. and left the operating room at 10:28 a.m. Decedent stopped breathing between 10:28 a.m. and 10:30 a.m. At 10:30 a.m., decedent's blood pressure had fallen to 95 over 45, her heart rate was approximately 56 beats per minute, and Coleman noticed that decedent was pale and cyanotic. Coleman called to decedent, but she did not respond. Coleman informed the surgeon. Oxygen was administered. The blood pressure monitor showed that decedent had no blood pressure, and the surgeon began a heart massage.

Decedent was given 10 cubic centimeters of epinephrine and .4 milligrams of atropine to restore her heartbeat, sodium bicarbonate to restore her blood pH level, and calcium chloride to increase the effectiveness of her heart. At both 10:36 a.m. and 10:41 a.m., she was given electric shock to restore her heartbeat, and at 10:40 a.m. she was given 3 milligrams of Levophed to increase her blood pressure.

At about 11 a.m., decedent was taken to intensive care. She never regained consciousness. A tracheostomy was performed, and decedent's thyroid was found to be abnormal. On June 21, 1982, decedent's tube feeding, antibiotics, and telemetry were discontinued. She died on July 1, 1982.

The plaintiffs alleged in their amended petition that defendants were negligent in not adequately obtaining and

evaluating decedent's medical history prior to the operation, in not properly monitoring her condition during the operation, and in not promptly notifying the attending physician of decedent's condition during surgery.

The defendants answered and alleged that decedent, as a registered nurse for many years, possessed sufficient knowledge to give an accurate history of her prior illnesses, conditions, or afflictions and her past use or nonuse of prescribed medications. The defendants further alleged decedent knew she was suffering from a thyroid condition when she entered the hospital for the operation and knew that medication for the condition had been prescribed in the past which she had not continued to take. Defendants also alleged that decedent should have been aware that this condition could place her at risk from the administration of anesthesia and that she failed to disclose the condition to the defendants. Defendants alleged that this conduct amounted to contributory negligence of a degree more than slight in comparison with any negligence on the part of the defendants, and barred recovery by plaintiffs in their wrongful death action.

The case was tried before a jury on November 19 and 21, 1986. During the trial, Reed Peters, M.D., an anesthesiologist, testified by videotape deposition. Peters testified that the defendant anesthetists were negligent and that their negligence was the proximate cause of decedent's death. Peters testified that decedent would have survived but for the following: (1) The defendants should have administered oxygen throughout the procedure; (2) the caudal anesthesia should have been administered in increments; and (3) the defendants failed to properly monitor decedent's vital signs during the operation. Peters also testified that hypothyroid patients do not tolerate anesthetics well.

Robert Sidner, M.D., a specialist in internal medicine, testified on behalf of the defendants. Sidner's opinion was that several factors contributed to decedent's death from hypoventilation. These factors included respiratory depression from medications, decedent's age, narcotic medication given prior to the operation, and the particular medication decedent received. In addition, decedent had a chronic pulmonary

condition, a diaphragmatic hernia, and trouble swallowing. Sidner also testified the decedent had a somewhat unusual anatomy, making it very easy for her to have an upper airway obstruction. Finally, Sidner testified, "[A]ll of these things plus we have her thyroid condition, I think is significant in this case because this would slow down the metabolism of the demerol."

Instruction No. 2, submitted to the jury, provided in part:

> Defendants deny that they were negligent whatsoever with regard to the care of Lois Irene Gehre. Defendants further allege that Lois Irene Gehre was contributorily negligent in that she failed to disclose her thyroid condition to the defendants at the time her pre-anesthesia history was taken. Defendants therefore pray that the plaintiffs' petition be dismissed.

The jury also received instruction No. 12, which provided in part:

> In connection with the defendants' claim that the decedent was herself negligent, the burden is on the defendants to prove by the greater weight of the evidence all of the following:
>
> 1. That Lois Irene Gehre had a thyroid condition at the time of the surgery;
>
> 2. That Lois Irene Gehre knew or should have known that she had a thyroid condition and that her thyroid condition could place her at risk for the administration of anesthesia;
>
> 3. That Lois Irene Gehre failed to disclose or advise the defendants concerning her thyroid condition;
>
> 4. That the failure of Lois Irene Gehre to disclose her thyroid condition to the defendants was a proximate cause . . . of the death of Lois Irene Gehre.

Both of these instructions were objected to by plaintiffs. In *Spath v. Coon*, 189 Neb. 822, 823, 205 N.W.2d 541, 542 (1973), we held: "Where contributory negligence is pleaded as a defense, and there is no competent evidence to support it, it is prejudicial error to submit to the jury issues involving contributory and comparative negligence." We must determine whether there was any competent evidence to support the second of the four factors set out in instruction No. 12.

While the defendants' expert did testify that decedent had a thyroid condition in 1977, he also testified during his cross-examination that there was no evidence that she had been instructed to take any medication for the condition at any time after 1977. Additionally, there was no evidence offered to show that decedent's 1977 thyroid condition was chronic.

There was no evidence that decedent, as a registered nurse educated in the 1920s or 1930s and retired from active nursing for more than 20 years, knew or should have known that a thyroid condition would make the administration of a particular anesthesia dangerous. Nor was there any evidence that any of the drugs administered to decedent were in common use during the time she was a practicing nurse.

The defendants contend that decedent was contributorily negligent in that she failed to disclose her thyroid condition in her answers to the preoperation questionnaire. There was no evidence that decedent knew or should have known that she had a thyroid condition at the time her medical history was taken or that such condition was death-threatening in connection with her proposed surgery. Decedent was never asked whether she had a thyroid condition by Gerald Messbarger, and the preanesthesia questionnaire did not request such information, nor was there any evidence that decedent knew or should have known that a thyroid condition was a "serious illness."

Defendants contend that "the standard of care ascribed to a patient is that of a reasonably prudent person" and that "[i]n this case, because of Lois Irene Gehre's long history of professional experience as a registered nurse, her conduct must be considered in light of her specialized knowledge and expertise." Brief for appellees at 18. To support their contention that decedent had more knowledge than a nonnurse patient, defendants relied on the testimony of Gerald Messbarger that before he graduated as a certified nurse anesthetist in 1955, he received certain training which resulted in knowledge he had "concerning the function of the thyroid gland and its importance." There was no evidence as to the training in such areas received by a nurse who graduated from a college in Oberlin, Kansas, in the late 1920s or early 1930s and whose nurse's work during that 20 or 25 years before her death had

been on a volunteer basis. The evidence in this case is wholly lacking to impose a greater burden on the patient in this case than on the professionals seeking medical information from her. There is no evidence in this record on which sufficient knowledge can be attributed to decedent which would result in her being contributorily negligent. There is no evidence that decedent's answers to the questionnaire submitted to her were not truthful.

There was no evidence submitted to support a finding of contributory negligence; it was prejudicial error for the trial court to have submitted the issue to the jury. The judgment of the district court is reversed and the cause remanded for a new trial in accordance with this opinion.

REVERSED AND REMANDED FOR A NEW TRIAL.