C.E. JENSEN, SPECIAL ADMINISTRATOR OF THE ESTATE OF
LAWRENCE JENSEN, DECEASED, APPELLANT, V. ARCHBISHOP
BERGAN MERCY HOSPITAL, A CORPORATION, APPELLEE.

459 N.W.2d 178

Filed August 3, 1990.    No. 87-1043.

Martin A. Cannon, of Matthews & Cannon, P.C., for appellant.

Charles F. Gotch, of Cassem, Tierney, Adams, Gotch & Douglas, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and FAHRNBRUCH, JJ.

SHANAHAN, J.

C.E. Jensen, special administrator of the estate of Lawrence Jensen, deceased, brought this malpractice action against Archbishop Bergan Mercy Hospital (Bergan Mercy). Jensen appeals from the judgment on the verdict for Bergan Mercy and, among his assigned errors, contends that the trial court erred in refusing one of Jensen's tendered instructions and in submitting the issue of contributory negligence.

## LAWRENCE JENSEN'S MEDICAL BACKGROUND

Lawrence "Larry" Jensen became a patient of Dr. Richard E. Peters in 1976, when Larry suffered a back injury while playing football for the UNO Mavericks. At that time, Larry, 21 years old, had a height of 6 feet 3 inches and weighed 263 pounds. After Larry's back surgery, Peters diagnosed Larry's condition as pulmonary embolism, in which a blood clot or thrombus has lodged in the lung after the clot, previously located at some other bodily location such as the pelvis or legs, has traveled through the bloodstream to the lung. Pulmonary embolism is a complication from thrombophlebitis, the formation of blood clots inside a vein, which often results from physical injury or trauma to the vein. Larry was treated with heparin, an anticoagulant, and, after several days, was released from medical care. Two years later, Peters saw Larry for abdominal problems. At that time, Peters advised Larry, who weighed 291 pounds, to lose weight. In 1981, Larry, weighing

326 pounds, was admitted to Bergan Mercy for abdominal and back pain. Peters' diagnosis was acute colitis, for which he hospitalized Larry and then released him 6 days later.

## LAWRENCE JENSEN'S DEATH

In January 1983, Larry, an equipment operator for a utility company, was injured in a family sledding accident and sustained a compression fracture of a lumbar vertebra. Larry was admitted to Bergan Mercy under Dr. Peters' care. At this time, Larry weighed 290 pounds, and, on account of the thrombophlebitis, Peters treated Larry with small doses of heparin to prevent blood clots while Larry was bedridden. After 15 days Peters released Larry from the hospital and advised him not to return to work.

When Larry was readmitted to Bergan Mercy on February 9, 1983, he complained of pain in the calf and thigh area of his left leg. Peters diagnosed Larry's condition as acute thrombophlebitis and treated him with 5,000 units of heparin every 8 hours. Larry continued to have pain in his left thigh and, 4 days after entering Bergan Mercy, complained of discomfort of his right chest area. Throughout this period, hospital nurses monitored Larry's condition, made notations on his hospital charts, and reported his condition to Peters, who continued the heparin.

Early on the morning of February 15, 6 days after his admission to Bergan Mercy, Larry called his nurse for help because he was nauseated and suffered from "dry heaves." His blood pressure dropped, his heart rate increased, and he suffered a "petit mal" seizure, for which a nurse administered oxygen. Larry's attending nurse telephoned Peters at his home. Peters ordered morphine and directed that Larry be taken to the intensive care unit. Shortly afterward, Larry became cold and clammy, then cyanotic and nonresponsive. The nurse again telephoned Peters and told him that Larry had gone into cardiac arrest. Peters immediately left for the hospital and, on arriving there, found that cardiopulmonary resuscitation was being administered to Larry. CPR throughout an hour produced no results. Larry died from cardiac arrest due to pulmonary embolism.

## WRONGFUL DEATH ACTION

*Pleadings.*

C.E. Jensen, Larry's father and special administrator of Larry's estate, filed a malpractice action against Bergan Mercy and alleged that the hospital, through its nurses, was negligent in failing to monitor Larry's condition, inform Peters concerning the details of Larry's condition, treat Larry properly, and obtain professional medical care for Larry during Peters' absence immediately before Larry's death.

In its answer, Bergan Mercy denied negligence and, as an affirmative defense, alleged that "the injuries, complications and subsequent death of [Lawrence Jensen] was [sic] partially due to his own negligence which caused and contributed to cause said injuries and complications and death . . . ."

*Evidence.*

Dr. Peters noted that Lawrence Jensen, throughout Peters' care and treatment, was markedly overweight and had been admonished to lose weight. Jacquin Jensen, Larry's widow, testified that no one, including Larry, had mentioned a diet in a program to reduce Larry's weight. Nothing indicates that Larry did not try to lose weight. Various physicians acknowledged that there are risks from obesity, such as a greater likelihood of blood clots when an overweight person is injured and immobilized, thromboembolic disease, hypertension, and, generally, a significant decrease in life expectancy. Experts testified and found fault in Lawrence Jensen's care from the hospital's nurses or testified that the nursing care met the appropriate standard. Some witnesses testified that nurses for Lawrence Jensen should have concluded that the heparin dosage ordered by Peters was incorrect and should have obtained another physician to attend Larry. Others testified that the nurses appropriately followed Peters' orders and that a nurse's questioning a physician's order would be highly irregular. One physician, as an expert for Bergan Mercy, expressed the opinion that the primary, if not the only, cause of Lawrence Jensen's death was Peters' negligence.

*Instructions and Verdict.*

During an instruction conference, the court considered Jensen's tendered instructions and, with counsel, reviewed the court's proposed instructions.

Jensen requested, and the court refused, the following instruction:

### INSTRUCTION NO. II

If the defendant hospital, through its employees in the course of their employment, knew, or in the exercise of reasonable care, skill and learning, should have known, that the treatment generated by Dr. Peters was improper, it became the duty of the hospital, through its said employees, to intervene and provide or obtain proper care for Larry Jensen.

Notwithstanding Jensen's objection, the court instructed the jury:

### INSTRUCTION NO. 3

. . . .

Defendant alleges that the injuries, complications and subsequent death of Mr. Jensen were partially due to his own negligence which caused and contributed to cause said injuries and complications and death, and whose negligence was more than slight and sufficient to bar recovery.

and

### INSTRUCTION NO. 18

It is the duty of a patient to follow all reasonable and proper advice and instructions given him by his physician regarding the patient's care, activity and treatment.

If the death of the plaintiff's decedent resulted in whole or in part because the patient failed to follow his physician's instructions, then to that extent the plaintiff may not recover damages against the defendant hospital.

The jury returned a general verdict for Bergan Mercy.

### ASSIGNMENT OF ERROR

Jensen claims that the court should have given instruction No. II regarding intervention by Bergan Mercy's staff. Jensen also contends that "the contributory negligence claim was

6

unfounded as a matter of law . . . ." Brief for appellant at 11. Bergan Mercy counters that instructions Nos. 3 and 18 were appropriate under the circumstances. Regarding instruction No. 3, Bergan Mercy argues that although instruction No. 3 does mention the defense of contributory negligence, a subsequent instruction informed the jury that the contents of instruction No. 3 merely stated "the claims and allegations of the parties and except for the admissions therein are not to be regarded as evidence in the case." Brief for appellee at 23. For that reason, Bergan Mercy argues, there is no harm from instruction No. 3. Referring to instruction No. 18, Bergan Mercy suggests:

> If the cause of [Lawrence Jensen's] pulmonary embolism was, even in part, within the control of Mr. Jensen, then his participation in that cause must be noted. The evidence demonstrated that Mr. Jensen's actions created a substantial increase in risk for pulmonary embolism. The pulmonary embolism resulted in death which plaintiff contends is wrongful . . . . All the court did under Instruction 18 was advise the jury that if the plaintiff's decedent caused in whole or in part his own death, then to that extent the hospital could not be found liable. The contribution of the plaintiff's decedent to his own poor health cannot be ignored in the analysis of this claim for wrongful death.

Brief for appellee at 24-25.

### REFUSED INSTRUCTION

> To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law; (2) the tendered instruction is warranted by the evidence; and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction.

*State v. Reynolds*, 235 Neb. 662, 691, 457 N.W.2d 405, 423 (1990); *State v. Pettit*, 233 Neb. 436, 445 N.W.2d 890 (1989); *Burns v. Veterans of Foreign Wars*, 231 Neb. 844, 438 N.W.2d 485 (1989).

Concerning intervention by Bergan Mercy's staff in Larry's care, in substance, Jensen places on the hospital and its nurses the duty to analyze all orders and conduct of the treating physician, and, if the hospital or nurses disagree with the treating physician's course of care, the hospital and its nurses must seek another physician for the patient whose care is in question or embark on care which the nurses deem proper under the circumstances, notwithstanding the order of the attending physician.

In *Sparks v. St. Luke's Reg. Medical Ctr.*, 115 Idaho 505, 768 P.2d 768 (1988), a Dr. Orme, the treating physician, instructed the hospital's nursing staff to extubate a patient who had been on a respirator. This extubation resulted in brain damage to the patient, whose condition required remaining on a respirator. The plaintiffs argued that the nurse, Newhall, should have sought another physician's advice before following the treating physician's instruction on extubation. In *Sparks,* the Supreme Court of Idaho rejected the plaintiff's contention and stated:

> To argue that Nurse Newhall should have sought out another hospital staff physician to change Dr. Orme's instructions would not only violate the applicable standard of care for Nurse Newhall, but suggests that the nurse was better qualified to evaluate the needs of the patient than Dr. Orme—essentially an exercise in hindsight.

115 Idaho at 516, 768 P.2d at 779.

As noted in the concurrence of Justice Henderson in *Koeniguer v. Eckrich*, 422 N.W.2d 600, 604 (S.D. 1988):

> A life is so often in a nurse's hands when the doctor is not in attendance. Nurses are not, however, licensed to practice medicine. They are not the ultimate decision-makers in terms of the patient's care; rather, they are the decision-implementers. . . . Nurses are not authorized to write discharge slips for patients and they are not to second-guess a physician's decision to discharge. . . . Were nurses to get into an advocacy role and to question the orders of doctors by which their statements were taken to superiors and to other doctors, they would soon lose their job or create extreme professional friction,

if not pandemonium, in the hospital. So, a nurse should not be required to be a practicing physician and make an independent evaluation to then question a doctor's decision.

Also, a commentator has noted:

As a rule of thumb, when a patient in a hospital is under the care of his private treating physician, a facility may be liable for professional malpractice only if its employees fail to follow that physician's direct and explicit orders. Hospital staff members are not authorized to alter or circumvent such orders and determine for themselves what is a proper course of medical treatment. Conversely, a hospital is generally insulated from liability if its staff merely follows the direct orders of the patient's private physician or is practicing under that physician's direct supervision.

J. Smith, Hospital Liability § 4.04 at 4-20 (1990).

As a general rule, hospital staff members lack authority to alter or depart from an attending physician's order for a hospital patient and lack authority to determine what is a proper course of medical treatment for a hospitalized patient. The foregoing is recognition of the realities and practicalities inherent in the physician-hospital nurse relationship.

We, therefore, conclude that the trial court properly refused Jensen's tendered instruction No. II because the tendered instruction was not a correct statement of law.

## CONTRIBUTORY NEGLIGENCE INSTRUCTION

*Review of Instructions Given.*

"In an appeal based on the claim of an erroneous instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant." *Rose v. City of Lincoln*, 234 Neb. 67, 74, 449 N.W.2d 522, 528 (1989).

"All instructions, read conjunctively, must correctly state the law, adequately state the issues, and not mislead the jury." *State v. Pierce*, 231 Neb. 966, 975, 439 N.W.2d 435, 443 (1989).

Jury instructions should be confined to issues presented by the pleadings and supported by evidence. *Bump v. Firemens*

*Ins. Co.*, 221 Neb. 678, 380 N.W.2d 268 (1986).

Submission of an issue on which the evidence is insufficient to sustain an affirmative finding is, generally, prejudicial and results in a new trial. *Mandery v. Chronicle Broadcasting Co.*, 228 Neb. 391, 423 N.W.2d 115 (1988).

*Causation and Contributory Negligence.*

"A defendant's conduct is the cause of an event if the event would not have occurred but for that conduct; conversely, a defendant's conduct is not the cause of an event if the event would have occurred without the defendant's conduct." *Zeller v. County of Howard*, 227 Neb. 667, 672, 419 N.W.2d 654, 658 (1988); *Prime Inc. v. Younglove Constr. Co.*, 227 Neb. 423, 418 N.W.2d 539 (1988). See, also, Prosser and Keeton on the Law of Torts, *Proximate Cause* § 41 (5th ed. 1984).

The proximate cause of an injury is that cause which, in a natural and continuous sequence, unaccompanied by any efficient intervening cause, produces the injury, and without which the result would not have occurred. *Union Pacific RR. Co. v. Kaiser Ag. Chem. Co.*, 229 Neb. 160, 425 N.W.2d 872 (1988); *Zeller v. County of Howard, supra*; *Greening v. School Dist. of Millard*, 223 Neb. 729, 393 N.W.2d 51 (1986).

"A plaintiff is contributorily negligent if (1) the plaintiff fails to protect himself or herself from injury; (2) the plaintiff's conduct concurs and cooperates with the defendant's actionable negligence; and (3) the plaintiff's conduct contributes to the plaintiff's injuries as a proximate cause." *Burns v. Veterans of Foreign Wars*, 231 Neb. 844, 850, 438 N.W.2d 485, 490 (1989). See, also, *Mandery v. Chronicle Broadcasting Co., supra*; *Lynn v. Metropolitan Utilities Dist.*, 225 Neb. 121, 403 N.W.2d 335 (1987).

When the affirmative defense of contributory negligence is pleaded, but there is no relevant evidence to support the defense, it is prejudicial error to submit the issue of contributory negligence. *Gehre v. Coleman*, 233 Neb. 32, 443 N.W.2d 606 (1989).

Bergan Mercy's defense of contributory negligence is premised on Lawrence Jensen's disregard of his physician's recommendation that Larry lose weight. Therefore, the

question is whether Larry's failure to lose weight is evidence which supports the defense of contributory negligence and, therefore, renders contributory negligence a jury question.

In a medical malpractice action, a defendant may raise the issue of contributory negligence as an affirmative defense and has the burden to prove contributory negligence. See, *Kaspar v. Schack*, 195 Neb. 215, 237 N.W.2d 414 (1976); *Mecham v. McLeay*, 193 Neb. 457, 227 N.W.2d 829 (1975); *Skar v. City of Lincoln, Neb.*, 599 F.2d 253 (8th Cir. 1979) (applying Nebraska law).

Generally, the defense of contributory negligence has been recognized in a medical malpractice action when the patient has (1) failed to follow a medical instruction, (2) refused or neglected prescribed treatment, or (3) intentionally given erroneous, incomplete, or misleading information which is the basis for medical care or treatment of the patient; for example, *Kaspar v. Schack, supra* (notwithstanding scheduled appointment, the patient failed to return for a physical examination which would have disclosed the patient's treatable condition which resulted in death); *Skar v. City of Lincoln, Neb., supra* (patient furnished materially false and incomplete information used to formulate care for the patient).

Availability of contributory negligence as a defense in a malpractice action was examined by the Supreme Court of Minnesota in *Martineau v. Nelson*, 311 Minn. 92, 102-03, 247 N.W.2d 409, 415-16 (1976):

> Both courts and text writers have emphasized, however, that the availability of a contributory negligence defense in a malpractice case is limited because of the disparity in medical knowledge between the patient and his doctor and because of the patient's right to rely on the doctor's knowledge and skill in the course of medical treatment. Thus, it has been held that it is not contributory negligence to follow the doctor's instructions or to fail to consult another physician when the patient has no reason to believe his pain is caused by the doctor's negligence. It has also been suggested that the patient's neglect of his own health after negligent treatment may be a factor in reducing damages, but should not bar all recovery. . . .

The relevant issue . . . which must be considered . . . is whether and to what extent plaintiffs may be charged with acting unreasonably in the face of certain statements and advice of defendant doctors.

Several courts have recognized the principle that a patient may be contributorily negligent in a failure to follow the treating physician's specific instructions in the patient's care and treatment. See, *Grippe v. Momtazee*, 705 S.W.2d 551 (Mo. App. 1986) (patient's failure to return to her physician or see a surgeon after her physician had diagnosed an apparently malignant tumor in the patient's breast); *Faile v. Bycura*, 297 S.C. 58, 374 S.E.2d 687 (1988) (patient refused to wear a medically prescribed postoperative orthotic device after surgery on patient's foot); *Welker v. Scripps Clinic etc. Foundation*, 196 Cal. App. 2d 338, 16 Cal. Rptr. 538 (1961) (patient fell while attempting to get out of bed, although repeatedly cautioned to call for assistance); *Wisker v. Hart*, 244 Kan. 36, 766 P.2d 168 (1988) (patient, who had been seriously injured, was instructed by physician not to return to work, but returned to strenuous physical labor which caused deterioration of the patient's condition and eventual death); *Hunter v. United States*, 236 F. Supp. 411 (M.D. Tenn. 1964) (patient revoked consent for additional surgery which would have arrested the condition involved in the malpractice claim).

Also, many courts have held that the defense of contributory negligence in a medical malpractice action is inapplicable when a patient's conduct provides the occasion for medical attention, care, or treatment which later is the subject of a medical malpractice claim or when the patient's conduct contributes to an illness or condition for which the patient seeks the medical attention, care, or treatment on which a subsequent medical malpractice claim is based. Illustrative is *Matthews v. Williford*, 318 So. 2d 480 (Fla. App. 1975), wherein plaintiff's decedent, 10 years before the heart attack which resulted in his death, had had a heart attack and was advised at that time to stop smoking and watch his weight. Ten years later, plaintiff's decedent suffered a heart attack, was admitted to a hospital under the defendant physician's care, and several hours later died from a massive myocardial infarction. In the wrongful

death action against the physician, the plaintiff claimed that the physician negligently failed to take medical precautions at the hospital to prevent the fatal heart attack. The physician requested, but was refused, an instruction on contributory negligence based on the earlier conduct of the patient regarding the patient's health. In affirming a plaintiff's verdict, the *Matthews* court stated:

> The law is well settled in this state that a remote condition or conduct which furnishes only the occasion for someoneelse's [sic] supervening negligence is not a proximate cause of the result of the subsequent negligence. . . .
>
> . . . .
>
> The plaintiff is not claiming damages for the heart attack. The damages she claims, and received from the jury under proper instructions from the court, were the damages for the survival period losses during the life expectancy of the deceased if he had survived, together with damages for the wrongful death, not the heart attack. Any conduct on the part of the plaintiff or the decedent contributing to the heart attack was not a proximate cause of the damages sought in these two actions.
>
> In short, conduct prior to an injury or death is not legally significant in an action for damages like this, unless it is a legal or proximate cause of the injury or death—as opposed to a cause of the remote conditions or occasion for the later negligence. So it is with conduct of a patient which may have contributed to his illness or medical condition, which furnishes the occasion for medical treatment. That conduct simply is not available as a defense to malpractice which causes a distinct subsequent injury—here, the ultimate injury, wrongful death.

318 So. 2d at 481, 483.

In *Sendejar v. Alice Physicians & Surgeons Hosp., Inc.*, 555 S.W.2d 879 (Tex. Civ. App. 1977), the patient, who had been involved in a serious automobile accident, was later treated by a physician who failed to promptly diagnose the plaintiff's spinal cord injuries sustained in the accident. In the patient's malpractice action, the physician argued that the patient should

be barred from a recovery because the patient's own conduct had caused the accident which resulted in the injury related to the malpractice claim. The court in *Sendejar* rejected the physician's argument, held that contributory negligence was not an issue submissible to the jury because the patient's negligence in sustaining the accidental injury did not constitute a defense to the malpractice claim, and stated:

> To constitute a bar to a suit for malpractice, the contributory negligence of the patient must have been an active and efficient contributing cause of the injury made the basis of the patient's claim; it must have been simultaneous and co-operating with the alleged fault of the defendant, must have entered into the creation of the cause of action and must have been an element in the transaction which constituted it.

555 S.W.2d at 885.

Refusal to instruct a jury on contributory negligence was affirmed in *Cowan v. Doering*, 215 N.J. Super. 484, 522 A.2d 444 (1987). Cowan, a suicidal patient under Doering's medical care for taking an overdose of sleeping pills, jumped from a second-story window of the hospital where Cowan was being treated. Cowan brought a malpractice action against her physicians and the hospital for failure to take appropriate precautionary steps to prevent her attempt at suicide. The defendants maintained that Cowan's condition provided a basis for contributory negligence as a defense to Cowan's malpractice action. The trial court refused to submit a contributory negligence instruction because Cowan's suicidal conduct constituted one of the very symptoms for which Cowan was being treated. Refusal of the contributory negligence instruction was upheld, when the court stated in *Cowan, supra* at 495-96, 522 A.2d at 450: "[W]e are entirely satisfied that the trial judge correctly refused to submit the question of plaintiff's negligence to the jury. Simply stated, plaintiff committed the very act that defendants were under a duty to prevent. . . . A triable factual question was not presented in that regard." See, also, *Lamoree v. Binghamton General Hospital*, 68 Misc. 2d 1051, 329 N.Y.S.2d 85 (1972) (malpractice action for negligent treatment of gunshot wound;

the hospital claimed that the patient was contributorily negligent in sustaining the gunshot wound in the first instance; held, patient's conduct before admission to the hospital is not a defense to the defendant's negligent or improper treatment); *Los Alamos Medical Center v. Coe*, 58 N.M. 686, 275 P.2d 175 (1954) (patient was not contributorily negligent on account of the patient's addiction to morphine when the treating physician readily prescribed additional morphine rather than attempting to treat the patient's underlying condition of addiction); *Owens v. Stokoe*, 140 Ill. App. 3d 355, 485 N.E.2d 537 (1985) (patient's failure to maintain his teeth and gums, so that the patient developed oral infections and pyorrhea, was insufficient to raise the issue of contributory negligence).

Finally, an important distinction between "contributing cause in fact" and "contributing legal or proximate cause" was recognized in *Whitehead v. Linkous*, 404 So. 2d 377 (Fla. App. 1981), a case in which Whitehead, in an apparent attempt at suicide, had taken an overdose of tranquilizers and consumed a large quantity of alcohol. After Whitehead was taken to the hospital, he died as the result of cardiac and pulmonary arrest. In a malpractice action, the trial judge instructed the jury to the effect that if the jury found that decedent's intentional or negligent acts in the attempted suicide were a contributing legal cause of decedent's injury, plaintiff's conduct, as contributory negligence, could be considered by the jury in reaching its verdict. In *Whitehead*, the appellate court held that the contributory negligence instruction was unwarranted and stated:

> A remote condition or conduct which furnishes only the occasion for someone else's supervening negligence is not a proximate cause of the result of the subsequent negligence. [Citation omitted.] Both Dr. Linkous and the hospital assert that the decedent's acts in attempting to commit suicide were a contributing legal cause of his death . . . . We think this argument confuses the difference between a contributing cause in fact and a contributing legal or proximate cause. . . . [I]t is clear that Whitehead's actions in consuming the Valium, Darvocet, and beer furnished the occasion for Dr. Linkous' and the hospital's

later negligence in failing to properly treat him. This conclusion is predicated upon the uncontroverted testimony . . . that but for the hospital's and the doctor's negligent treatment of the deceased, he would be alive today. Since Whitehead's death would not have occurred "but for" the negligent acts or omissions of the hospital and the doctor, those acts and omissions must be deemed the cause of the injury. [Citations omitted.] Stated differently, any conduct on Whitehead's part before he entered the hospital which contributed to his cardiac and pulmonary arrest and subsequent death was not a proximate, legal cause of the damages sought in this case.

404 So. 2d at 379.

Consequently, to be considered as and constitute contributory negligence in a medical malpractice action, a patient's negligence must have been an active and efficient contributing cause of the injury, must have cooperated with the negligence of the malpractitioner, must have entered into proximate causation of the injury, and must have been an element in the transaction on which the malpractice is based. Accordingly, in a medical malpractice action, the defense of contributory negligence is inapplicable when a patient's conduct provides the occasion for medical attention, care, or treatment which later is the subject of a medical malpractice claim or when the patient's conduct contributes to an illness or condition for which the patient seeks the medical attention, care, or treatment on which a subsequent medical malpractice claim is based.

Although Larry's failure to lose weight may have been causally related to his pulmonary embolism, Larry's conduct concerning his weight problem merely furnished an occasion or condition for the medical care which is the basis of the malpractice action against Bergan Mercy. Any conduct on Larry's part before he was admitted to Bergan Mercy and which may have causally contributed to his demise was not a proximate cause in reference to alleged malpractice in medical treatment at Bergan Mercy. Relying on instruction No. 18, the jury may have found that Lawrence Jensen's conduct before admission to Bergan Mercy constituted contributory

negligence. Because there was no evidence to support a finding of contributory negligence, it was prejudicial error to submit the issue of contributory negligence through instruction No. 18. Since the trial court committed reversible error by giving instruction No. 18, we believe that the error was underscored by instruction No. 3, which was a summary or synopsis of the parties' contentions in the malpractice action. Although a trial court may analyze, summarize, and submit the substance of numerous allegations in a malpractice action, *Greenberg v. Bishop Clarkson Memorial Hospital*, 201 Neb. 215, 266 N.W.2d 902 (1978), a trial court, expressing such summary or synopsis, shall not place before the jury an issue which is not raised by the pleadings or is unsupported by evidence. See, *Bump v. Firemens Ins. Co.*, 221 Neb. 678, 380 N.W.2d 268 (1986); *Empire State Building Co. v. Bryde*, 211 Neb. 184, 318 N.W.2d 65 (1982); *Snyder v. Farmers Irr. Dist.*, 157 Neb. 771, 61 N.W.2d 557 (1953).

Because we reverse the judgment of the district court and remand for a new trial, Jensen's other assignments of error need not be addressed. The district court's judgment is reversed, and this cause is remanded for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

GRANT, J., not participating.