Cherie KILDAHL, Susan Kildahl, Donald Kildahl, Anthony Kildahl, and Daniel Kildahl, Plaintiffs–Appellants,

v.

Gordon TAGGE, M.D., Merlin Otteman, M.D., and Thomas G. Chiavetta, M.D., Defendants–Appellees.

No. 95CA1302.

Colorado Court of Appeals, Div. V.

Dec. 27, 1996.

Rehearing Denied Feb. 6, 1997.

Certiorari Denied Sept. 2, 1997.

**1284** 

Tondre & Lapuyade, P.C., Brice A. Tondre, Denver, for Plaintiffs–Appellants.

Johnson, Ruddy, Norman & McConaty, P.C., Roger F. Johnson, Ann M. Thompson, Denver, for Defendants–Appellees.

Opinion by Judge RULAND.

This is a wrongful death action based upon alleged medical malpractice in the treatment of plaintiffs' mother by defendants, Gordon Tagge, M.D., Merlin Otteman, M.D., and Thomas G. Chiavetta, M.D. Plaintiffs, Cherie, Susan, Donald, Anthony, and Daniel Kildahl, appeal from the judgment entered upon a jury verdict in favor of defendants. We reverse and remand for a new trial.

In 1988, the decedent was treated in a hospital emergency room because of pain associated with an umbilical hernia. When she was discharged, her treating physician instructed her to see a surgeon "in 2–3 days if not improved or for future care." The evidence presented at trial indicated that decedent never underwent surgery for the hernia.

Four years later, decedent suffered significant pain and returned to the emergency room for treatment of the hernia. Surgery performed by defendant Tagge revealed that a portion of her colon had become trapped within the hernia sac, a condition denominated "incarceration."

Defendant Tagge released the incarcerated portions of the colon and repaired the hernia. Although defendant Tagge noted that part of the colon showed signs of having been denied an adequate blood supply during the incarceration, he concluded that no significant injury to this section had occurred and did not remove it.

After decedent's postoperative condition began to deteriorate, another surgery revealed that the portions of her colon that were denied blood had died and become gangrenous. Although the dead tissue was eventually removed, the condition caused decedent's death.

At trial, plaintiffs presented evidence that defendants were negligent in failing to remove the colon tissue during the initial surgery. However, defendants claimed that, if decedent had consulted a competent physician following her release from the emergen-

cy room in 1988, that physician would have recommended surgery. Defendants also presented evidence that, if surgery had been conducted on the hernia in 1988, the incarceration and the resulting complications encountered in 1992 would have been avoided. On this basis, the jury was instructed concerning comparative negligence.

The jury returned a verdict finding all defendants negligent. However, based on the comparative negligence defense, it attributed 51% of the negligence that caused decedent's death to decedent, thus precluding plaintiffs from the recovery of any damages.

### I

Over plaintiffs' objection, the trial court instructed the jury that:

A patient is negligent when the patient fails to do an act which a reasonably careful person would do ... under the same or similar circumstances to protect him or herself from bodily injury or death.

The jury was further instructed that plaintiffs would not be permitted to recover if decedent's negligence exceeded the combined negligence of defendants.

Plaintiffs contend that the trial court erred in instructing the jury relative to comparative negligence. Relying on cases such as *Spence v. Aspen Skiing Co.*, 820 F.Supp. 542 (D.Colo.1993); *Jensen v. Archbishop Bergan Mercy Hospital*, 236 Neb. 1, 459 N.W.2d 178 (1990); and *Matthews v. Williford*, 318 So.2d 480 (Fla.Dist.Ct.App.1975), plaintiffs argue that the defense of comparative negligence is not available when a patient's conduct provides only the occasion for medical treatment and the malpractice by health care professionals is the cause of the injury.

Relying upon *Songer v. Bowman*, 804 P.2d 261 (Colo.App.1990), *aff'd*, 820 P.2d 1110 (Colo.1991) and *Blackman v. Rifkin*, 759 P.2d 54 (Colo.App.1988), defendants contend that the court properly instructed the jury on comparative negligence. Under the circumstances of this case, we agree with plaintiffs.

Unlike *Songer v. Bowman, supra*, there is no contention here that decedent failed in any respect to follow the instructions of these defendants in her treatment. Hence, the

analysis in that case fails to support defendants' argument here.

In *Blackman*, the plaintiff was admitted to an emergency room in an intoxicated state with a scalp laceration. While being treated for the laceration, the plaintiff regurgitated and inhaled the vomit into her lungs. This resulted in permanent brain damage.

The *Blackman* plaintiff requested an instruction that it was not a defense to medical malpractice that her conduct prior to admission at the emergency room may have caused or contributed to her medical condition. A division of this court disagreed because there was some evidence that the plaintiff's regurgitation and aspiration were the direct result of her intoxication and not of any act or omission by the medical staff. In addition, other evidence indicated that the emergency room staff had encountered difficulty in determining whether the plaintiff's symptoms resulted from head trauma or intoxication. Finally, substantial evidence was presented both that the plaintiff's inability to provide an adequate medical history for the emergency room staff and her combative and resistive behavior interfered with the staff's diagnosis and treatment.

As a result, the *Blackman* court concluded that the plaintiff's conduct was neither remote nor distinct from the issues relative to medical malpractice. Accordingly, it concluded that the cases relied upon by the plaintiff did not support the requested instruction because those cases concerned remote conditions or conduct that furnished the occasion for medical malpractice.

■ Here, even if we assume that the recommendation from the emergency room doctor four years earlier meant that decedent should consult a surgeon even if the pain did not persist, we conclude that the decedent's failure to do so was distinct and remote to the causation of her death. *See Matthews v. Williford, supra* (patient's failure to follow medical advice to stop smoking and lose weight 10 years prior to heart attack was not a legal cause of his death from negligent treatment). We arrive at that conclusion because no evidence was presented that her prior failure to obtain treatment in

some way prevented defendants from properly diagnosing and surgically treating her current condition. *See Jensen v. Archbishop Bergan Mercy Hospital, supra* (patient's failure to follow medical advice to lose weight resulted in the need for treatment of pulmonary embolism but did not bar the claim for supervening negligence in treatment).

Indeed, it is undisputed that the incarceration occurred within hours of her admission to the emergency room and subsequent surgery in 1992. Conversely, there was no evidence suggesting that decedent failed to provide an adequate medical history or that she failed to cooperate in the context of the proposed treatment by defendants. Hence, we conclude that, under *Blackman,* decedent's conduct was sufficiently remote and distinct from defendants' medical treatment so as to preclude reliance upon that conduct to support an instruction on comparative negligence.

Therefore, the trial court erred in instructing the jury on comparative negligence. *See Spence v. Aspen Skiing Co., supra* (patient's failure to follow dietary regimen causing dizzy condition could not be relied upon for comparative negligence instruction where emergency medical technician injured patient's arm in administering an intravenous solution). Hence, a new trial is required.

## II

Among the issues that may arise on retrial is plaintiffs' contention that the trial court erred in refusing to submit a "thin skull" instruction to the jury. We disagree.

A "thin skull" instruction is appropriate when a defendant seeks to avoid liability by asserting that the victim's injuries would have been less severe had the victim been an average person. *Schafer v. Hoffman,* 831 P.2d 897 (Colo.1992).

Here, defendants presented evidence that decedent was morbidly obese and suffered from both a terminal lung condition and the hernia condition. However, defendants did not attempt to prove that decedent would have survived the hernia complications if not for these persisting conditions. Rather, this evidence was presented relative to the appropriate standard of care for decedent and the course of medical treatment decided upon by defendants.

Thus, the trial court did not err in refusing the "thin skull" instruction.

## III

Finally, plaintiffs contend that the trial court erred in refusing to allow them to assert a claim under § 26–4–403(3), C.R.S. (1996 Cum.Supp.) for decedent's medical expenses paid by the State of Colorado's Medicaid program. We disagree.

None of the plaintiffs appears in this litigation as a representative of the decedent's estate. Plaintiffs presented the trial court with an assignment agreement between them and the State of Colorado for decedent's medical expenses. The trial court concluded that plaintiffs were not proper assignees under § 26–4–403(3) and were precluded from asserting a claim for the medical expenses paid by the state.

Section 26–4–403(3) provides:

If medical assistance is furnished to ... a recipient ... for which a third party is liable, the state department has an enforceable right against such third party for the amount of such medical assistance.... *Whenever the recipient has brought or may bring an action in court to determine the liability of the third party, the state department ... may enter into appropriate agreements and assignments of rights with the recipient and the recipient's attorney ....* [T]he state department may institute and prosecute, or intervene of right in legal proceedings against the third party having legal liability, either in the name of the state department or in the name of the recipient or his assignee, guardian, personal representative, estate, or survivors.

(emphasis supplied)

In determining whether the assignment to plaintiffs was proper under § 26–4–403(3), we must first consider the plain language of the statute. *See People v. District Court,* 713 P.2d 918 (Colo.1986). If that language is clear and unambiguous, we must interpret

and apply the statute as written. *See City of Aurora v. Board of County Commissioners,* 919 P.2d 198 (Colo.1996).

The plain language of § 26–4–403(3) allows the state to assign its rights only to the recipient or the recipient's attorney. Thus, the trial court correctly ruled that plaintiffs were not proper assignees and were precluded from asserting a claim for medical expenses.

The judgment is reversed and the cause is remanded for a new trial consistent with the views expressed in this opinion.

MARQUEZ and TAUBMAN, JJ., concur.